1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   FRAN COLE, et al.,                           No. 2:14-cv-00078-KJM-AC

12                   Plaintiffs,

13         v.                                      ORDER

14   TENNESSEE WALKING HORSE
     BREEDERS' AND EXHIBITORS'
15   ASS'N,

16                   Defendant.

17

18              This matter is before the court on plaintiff's second ex-parte motion for a

19   temporary restraining order ("TRO").  (ECF 11.)  For the reasons below, the motion is DENIED

20   without prejudice.

21   I.      BACKGROUND

22              Plaintiffs challenge on various grounds defendant's requirement that all California

23   members of the Tennessee Walking Horse Breeders' and Exhibitors' Association ("TWHBEA

24   or defendant) appear in person in Lewisburg, Tennessee in order to cast their vote in the recall

25   election of TWHBEA's California Director Christy Lantis.  Plaintiffs seek, among other things,

26   an injunction to stop the February 3, 2014 special meeting at which the recall vote of Landis will

27   take place and an injunction requiring defendant to permit mail-in ballots for the recall vote.  The

28   gravamen of plaintiffs' claims is that defendant should accommodate two of the named plaintiffs,

1   who are disabled under the Americans with Disabilities Act ("ADA"), by permitting the use of

2   mail-in ballots.  Additionally, defendant's requirement that all of its California members attend in

3   person the February 3 special meeting violates Tennessee's Nonprofit Corporations Code and

4   contravenes defendant's own bylaws.

5           Plaintiffs filed their complaint on January 13, 2014, bringing seven claims:

6   (1) violation of the ADA; (2) violation of the Unruh Act; (3) breach of governing documents and

7   Tennessee corporations code; (4) breach of contract; (5) violation of Business and Professions

8   Code § 17200 ("Unfair Competition Law" or "UCL"); (6) declaratory relief; and (7) preliminary

9   and permanent injunction.  (ECF 1 ("Compl.").)  The court denied without prejudice plaintiffs'

10  first motion for a TRO, filed January 21, 2014 (ECF 5), because plaintiffs did not make the

11  requisite showing to obtain a TRO (ECF 6).  Specifically, plaintiffs did not address the public

12  interest and balance of equities prongs as outlined in *Winter v. Natural Res. Def. Council, Inc.*,

13  555 U.S. 7, 20 (2008).  Plaintiffs filed the instant TRO, which addresses each of *Winter*'s prongs,

14  on January 28, 2014.  (ECF 11.)  Defendant filed a motion to dismiss and opposition that same

15  day, arguing that this court lacks subject matter jurisdiction and that plaintiffs' ADA claim is not

16  cognizable.  (ECF 12.)

17  II.     ANALYSIS

18          A.      Subject Matter Jurisdiction

19          Federal courts are courts of limited jurisdiction and, until proven otherwise, cases

20  lie outside the jurisdiction of the court.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

21  377–78 (1994).  Lack of subject matter jurisdiction may be challenged by either party or raised

22  *sua sponte* by the court.  FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3).  District courts have

23  subject matter jurisdiction in two situations: 1) federal question jurisdiction over "civil actions

24  arising under the Constitution, laws, or treaties of the United States"; and 2) diversity jurisdiction

25  where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

26  costs" and there is complete diversity between the parties.  28 U.S.C. §§ 1331, 1332(a).

27  Plaintiffs' plead that this court has jurisdiction on both federal question and diversity grounds.

28  /////

2

1   (Compl. ¶ 9.)  Defendant argues federal question jurisdiction does not exist because plaintiffs'

2   sole federal claim under the ADA is not cognizable.

3            The court need not reach defendant's federal question jurisdiction argument

4   because the court has diversity jurisdiction over this case.  Complete diversity among the parties

5   exists because plaintiffs are citizens of California and defendant is a citizen of Tennessee.  (*See*

6   Compl. ¶¶ 2–6.)  Plaintiffs also allege that the amount in controversy exceeds $75,000.  (*Id.* ¶ 9

7   ("[T]he controversy exceeds the sum or value of $75,000.")); *see Crum v. Circus Circus*

8   *Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) ("Generally, the amount in controversy is

9   determined from the face of the pleadings.").  The sum claimed by plaintiffs controls so long as

10  the claim is made in good faith.  *Crum*, 231 F.3d at 1131 (citation omitted).  "To justify dismissal,

11  'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'"

12  *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul*

13  *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

14           In their prayer for relief, plaintiffs request actual damages, injunctive and

15  declaratory relief, statutory minimum damages under the Unruh Act, attorneys' fees, general and

16  special damages, and interest and prejudgment interest.  None of these requests is on its face

17  meritless.  While no specific amount of damages or other specific information is provided, the

18  court cannot conclude to a legal certainty based upon the face of the complaint that the amount in

19  controversy in this case is less than $75,000.  Accordingly, this court has jurisdiction under 28

20  U.S.C. § 1332(a).

21           B.      Motion for TRO and Success on the Merits

22           A plaintiff seeking a TRO must establish she is "likely to succeed on the

23  merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of

24  equities tips in his favor, and . . . an injunction is in the public interest."  *Winter v. Natural Res.*

25  *Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush &*

26  *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the analysis for temporary restraining orders and

27  preliminary injunctions is "substantially identical").  Plaintiffs move for a TRO on the basis of

28  four of their seven claims: (1) violation of Tennessee Law and defendant's bylaws; (2) violation

3

of the ADA; (3) violation of the Unruh Act; and (4) violation of the UCL.  (ECF 11-1 at 9–17.)

Because plaintiffs have not shown they are likely to succeed on the merits of these four claims,

the court does not consider the remaining three *Winter* prongs.  *See Pimentel v. Dreyfus*, 670 F.3d

1096, 1111 (9th Cir. 2012) (a court need not reach the other prongs if the moving party cannot as

a threshold matter demonstrate a "fair chance of success on the merits") (internal quotations and

citation omitted).

          1.   Tennessee Law

          Plaintiffs are not likely to succeed on their claim that defendant's refusal to mail

written ballots violates Tennessee law.  Plaintiffs argue that defendant has violated Tennessee

Code section 48-57-108(a), entitled "Actions by written ballot," which reads: "Except as provided

in subsection (e) and unless prohibited or limited by the charter or bylaws, any action which may

be taken at any annual or special meeting of members may be taken without a meeting if the

corporation delivers a written ballot to every member entitled to vote on the matter."  (ECF 11-1

at 10.)  Plaintiffs interpret this language to mean that defendant cannot require its members to

appear in person to vote.  (*Id.*)  This interpretation contravenes the plain language of subsection

48-57-108(a), however, which authorizes action by written ballot but does not require such action

when an organization's members demand it.  While plaintiffs have a stronger argument that

defendant's bylaws do not require attendance, *see, e.g.*, Article II, Sections 2–4, Corporation

Bylaws of TWHBEA, Ex. A, Compl., ECF 1 (stating that, for regular annual meetings,

"[m]embers shall not be required to be present to vote but may vote by mail ballot"), plaintiffs do

not in their motion link this potential violation of their bylaws to any cognizable claim upon

which a federal court could grant relief.

          2.   ADA and Unruh Act

          Plaintiffs also are unlikely to succeed on their ADA and Unruh Act claims.  An

individual alleging discrimination under the ADA must show that: "(1) he is disabled as that term

is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place

of public accommodation; (3) the defendant employed a discriminatory policy or practice; and

(4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a)

1    failing to make a requested reasonable modification that was (b) necessary to accommodate the

2    plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)

3    (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001)).  Plaintiffs here do not

4    demonstrate defendant discriminated against the two disabled plaintiffs "based upon" their

5    disability because there is no allegation or evidence in the record that plaintiffs ever requested an

6    accommodation for their disability.  *See id.* at 1083 (finding ADA violation where plaintiff

7    requested movie theater accommodate his disability by ensuring his attendant sat next to him);

8    *PGA Tour, Inc.*, 532 U.S. at 669 (finding ADA violation where plaintiff made a request,

9    supported by "detailed medical records, for permission to use a golf cart").

10           Plaintiffs assert plaintiffs Tarnawski and Barton qualify as "disabled" under the

11    ADA.  (ECF 11-1 at 11.)  This assertion is uncontested.  Plaintiffs do not, however, direct the

12    court to any proof that plaintiffs requested that defendant accommodate them by permitting them

13    to vote by mail-in ballot.  Although the court has no obligation to "comb the record," *Forsberg v.*

14    *Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988), the court has examined each of these

15    plaintiffs' declarations (ECFs 11-4, 11-5) as well as the declarations of their counsel and plaintiff

16    Cole (ECFs 11-6, 11-2).  No declaration suggests defendant was ever requested to accommodate

17    Tarnawski and Barton.  (*See, e.g.*, Decl. of Fran Cole ¶ 21, ECF 11-2 ("Despite [counsel's]

18    repeated requests to have TWHBEA provide written ballots so California members could vote by

19    mail for the recall election of Christy Lantis rather than being forced to travel to Tennessee to

20    vote in person, TWHBEA refused this reasonable request.").)[1]  Nor does the California members'

21    letter to defendant demanding written ballots say anything about accommodating disabled

22    members.  (Ex. 13, ECF 14.)  Instead, plaintiffs appear to have demanded mail-in ballots for all

23    California members without ever referencing the need to make reasonable accommodations for

24    certain of these members.

25           Plaintiffs assert no separate basis for their Unruh Act claim, violations of which

26    are typically premised on violations of the ADA.  *See* CAL. CIVIL CODE § 51(f) ("A violation of

27
     ───────────────
28   [1]  Even if the court were to consider Ms. Cole's supplemental declaration filed on January 29,
     2014, over defendant's objection, the court would not reach a different conclusion.

5

the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-3361) shall also constitute a violation of this section.").  As described above, on the record before the court, plaintiffs are not likely to prevail on the merits of their claim that defendant violated the ADA.  Accordingly, plaintiffs have not shown they are likely to prevail on the merits of their Unruh Act claim either.

### 3.   UCL

Finally, plaintiffs are not likely to succeed on their UCL claim.  Plaintiffs base their UCL claim on the "unlawful" and "unfairness" UCL prongs.  The former has no merit because, as described above, plaintiffs have not shown defendant has violated some other law. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (By proscribing "any unlawful" business practice, section 17200 "'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'")).  Nor do plaintiffs show exactly how defendant's conduct violated the "unfair" prong.  *Lyons v. Bank of Am., NA*, No. 11-01232 CW, 2011 WL 3607608, at *10 (N.D. Cal. Aug. 15, 2011) ("After *Cel–Tech*, California appellate courts have applied three different approaches for determining unfairness in consumer cases.").  Plaintiffs argue that an "unfair practice" can be predicated on a violation of a company's own internal policies.  (ECF 11-1 (citing *Smith v. Chase Mortg. Credit Grp.*, 653 F. Supp. 2d 1035, 1043 (E.D. Cal. 2009).)  *Smith*, however, is readily distinguishable; the claim in that case, as with all UCL "unfairness" claims of which this court is aware, concerned consumer transactions.  653 F. Supp. 2d at 1043.  Even if this court found a clear violation of defendant's own bylaws, plaintiffs' single-line argument invoking *Smith* does not support an unprecedented extension of the UCL's "unfairness" prong to corporate governance disputes.

/////

/////

/////

/////

6

IV.     CONCLUSION

         For the foregoing reasons, plaintiffs' motion for a temporary restraining order is DENIED without prejudice.

         IT IS SO ORDERED.

Dated:  January 30, 2014.

_____
UNITED STATES DISTRICT JUDGE

7